# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

**RAJESH KUMAR**,

        *Petitioner*,

    v.

**LUIS SOTO, *et al.***,

        *Respondents*.

No. 26-cv-00203

**AMENDED ORDER**

---

**THIS MATTER** comes before the Court by way of Petitioner's Motion for Attorneys' Fees ("Motion") pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (ECF No. 14). Respondents oppose the Motion. (ECF No. 19); and

**WHEREAS**, Petitioner is a native and citizen of India who arrived in the United States on or about September 3, 2024. (Ex. B, ECF No. 11-2 at 2–3). He was then detained by U.S. Customs and Border Patrol, promptly placed in removal proceedings, and served with a Notice to Appear at a removal hearing on October 24, 2025. (*Id.*; *see* Ex. D, ECF No. 11-4 at 2 (Notice to Appear)). Respondents thereafter released Petitioner into the United States on an Order of Recognizance pending the removal hearing. Petitioner's removal hearing was canceled on August 28, 2025, and never rescheduled. (Ex. B, ECF No. 11-2 at 3); and

**WHEREAS**, on January 8, 2026, Immigration and Customs Enforcement ("ICE") agents arrested and re-detained Petitioner without providing him any bond hearing or other individualized custody determination following his detention. (*Id.*). On January 11, 2026, Petitioner sought a Writ of Habeas Corpus to effectuate his immediate release from ICE custody. (ECF No. 1). He filed an Amended Petition the next day. (ECF No. 4). The Court ordered Respondents to file an expedited

response to the Amended Petition. (ECF No. 7). Respondents filed their answer and letter response on January 14, 2026, which they acknowledged was incomplete and did not fully respond to the Court's Order. (ECF No. 11 at 2). Additionally, Respondents acknowledged that the statutory arguments and facts in this case are materially identical to those that the Court has already rejected in *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397 (D.N.J. Oct. 22, 2025) and other cases. (*Id.* at 1, 3); and

   **WHEREAS**, on January 14, 2026, the Court found that Petitioner was unlawfully detained under Respondents' repeated invocation of 8 U.S.C. § 1225 because, as set forth in *Bethancourt Soto*, Petitioner was apprehended inside the United States after residing here for an extended period, and therefore he should have been detained under 8 U.S.C. § 1226, which requires an opportunity to seek bond. (Order, ECF No. 12 at 2–3). The Court therefore granted the Writ and ordered Petitioner's immediate release from custody. (*Id.* at 4). Respondents released Petitioner that same day. (ECF No. 13); and

   **WHEREAS**, Petitioner now seeks an award of fees pursuant to the EAJA. (ECF No. 14); and

   **WHEREAS**, under the EAJA, a court "shall award to a prevailing party" reasonable attorneys' fees unless the Government's "position" was "substantially justified or that special circumstances make an award unjust."[1] 28 U.S.C. § 2412(d)(1)(A). The Government bears the burden of proving its position was justified. *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993). The Government's position is substantially justified only if its conduct was "justified to a degree that could satisfy a reasonable person." *Johnson v. Gonzales*, 416 F.3d 205,

---

[1] Respondents do not contest the proposition that Petitioner is the "prevailing party" in this litigation. (*See* ECF No. 19 at 2–3). Nor is there any dispute that Petitioner falls within the other qualifying criteria to be eligible for fees under the EAJA. *See* 28 U.S.C. § 2412(d)(2)(B).

210 (3d Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Moreover, "'[i]n immigration cases, the Government must meet the substantially justified test twice': once for its underlying conduct and once for its decisions in the ensuing litigation about that conduct." *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 433 (3d Cir. 2026) (quoting *Johnson*, 416 F.3d at 210). To meet its burden on either front, the Government must show its position had: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounds; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir. 1985); and

**WHEREAS**, as to the underlying agency conduct, Respondents' Opposition does not even attempt to address the reasonableness of the source conduct giving rise to this case; that is, the Department of Homeland Security's abrupt re-interpretation of the meaning of "applicants for admission" under § 1225. *See* Memorandum from Rodney S. Scott, Comm'r of U.S. Customs & Border Prot., Detention of Applicants for Admission (July 10, 2025) (https://www.cbp.gov/document/foia-record/detention-applicants-admission). For over thirty years, DHS has interpreted this statute to be inapplicable to noncitizens who entered the United States without inspection. *See Castanon-Nava v. DHS*, 161 F.4th 1048, 1062 n.13 (7th Cir. 2025) (quotations and citations omitted) ("It also does not escape our notice that Defendants' recent reliance on § 1225(b)(2)(A) to detain noncitizens discovered within the United States upends decades of practice."); *see also Matter of Yajure Hurtado,* 29 I. & N. Dec. 216, 225 & n.6 (BIA 2025) ("We acknowledge that for years Immigration Judges have conducted bond hearings for aliens who entered the United States without inspection."). Though every passing administration is entitled to re-prioritize federal law enforcement, Respondents have not provided any justification, let alone a substantial one, for such a radical administrative departure from an

interpretation of a statute that had been considered virtually unimpeachable for years. *See Salazar v. Noem*, No. 26-44, 2026 WL 594606, at *1 (D. Neb. Mar. 3, 2026) ("While the U.S. Attorneys are likely acting in good faith to defend the government's actions, the Court is not persuaded that the government was substantially justified in dramatically changing its policy so as to justify mandatory detention and deny noncitizens process due under § 1226(a)."). Respondents have therefore failed to meet their burden to establish substantial justification of their prelitigation position; and

**WHEREAS**, the lack of substantial justification for Respondents' prelitigation conduct compels the same conclusion as to their continued position asserted in this litigation. Respondents argue that their interpretation of § 1225(b)(2) was substantially justified based on an administrative decision of the Board of Immigration Appeals and a few out-of-circuit courts that have endorsed it. (ECF No. 19 at 2 (citing, among others, *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Matter of Hurtado*, 29 I&N Dec. 216)). [2] But those decisions do not alter the central point: the Court can find not a single decision in this District, nor in the district courts within this Circuit, that has adopted Respondents' interpretation of § 1225(b). *See, e.g.*, *Bethancourt Soto*, 807 F. Supp. 3d at 397; *Lemu v. Soto*, No. 25-17098, 2025 WL 3470298, at *1 (D.N.J. Dec. 3, 2025); *Patel v. Almodovar*, No. 25-15345, 2025 WL 3012323, at *1 (D.N.J. Oct. 28, 2025). Thus, throughout this litigation, Respondents advanced their position before a judge who had repeatedly rejected the very same theory, *see, e.g.*, *Bethancourt Soto*, 807 F. Supp. 3d at 397, in a Circuit where that theory had been uniformly and

---

[2] The Court fails to see the relevance of Respondents' invocation of *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). *Jennings* only confirms the mandatory nature of detention for those who properly fall within § 1225(b), but it did not resolve the antecedent question presented here: whether a noncitizen like Petitioner, apprehended inside the United States after residing here for an extended period, falls within § 1225(b)(2) rather than § 1226.

unequivocally rejected at the time of this litigation.[3] That is not a substantially justified position, whatever support Respondents may find in a paucity of non-binding decisions elsewhere; and

**WHEREAS**, the Court also rejects Respondents' alternative invocation of "special circumstances." (Gov't Opp., ECF No. 19 at 5). Respondents contend that fees should be denied because this case involves a novel and evolving question of statutory interpretation, and the EAJA should not deter the Government from advancing good-faith legal arguments in unsettled areas. (*Id.* (citing *Taylor v. United States*, 815 F.2d 249, 252 (3d Cir. 1987))). That principle may be sound in theory, but it does not apply here.[4] For the reasons already stated, Respondents' position in this case was not merely a good-faith opportunity for Respondents to test an unsettled question of law when the law in this District, and in the district courts within the Third Circuit, was clear. Respondents have therefore failed to carry their burden to demonstrate special circumstances that would render a fee award improper. Petitioner is therefore entitled to fees under the EAJA; and

**WHEREAS**, this Court joins the growing number of district courts nationwide who have

---

[3] The Court recognizes that the Third Circuit is likely to address the § 1225(b)(2) issue in the near future. *See Lopes De Andrade v. Dir. Phila. Field Off. Immigr.*, No. 26-1454 (3d Cir.); *Butskhrikidze v. USCIS*, No. 26-1455 (3d Cir.). Even so, Respondents advanced their position in this case against the backdrop of settled and unmistakably contrary law within this District.

[4] To be clear, the Court does not foreclose the possibility that, at the outset, this issue could fairly have been described as novel, evolving, or the subject of a good-faith argument in an unsettled area. But whatever uncertainty may once have existed had long since dissipated by the time Respondents litigated this matter. By then, this was no longer a genuinely open question being presented in good faith for resolution; it was a repeatedly rejected position pressed in the face of an overwhelming body of district court authority, including in this District. *See, e.g., Demirel v. Fed. Det. Ctr. Phila.*, No. 25-5488, 2025 WL 3218243, at *4–5 (E.D. Pa. Nov. 18, 2025) (noting "the law is clear" and that "of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here. Those decisions are plainly correct."); *see also* App., *Demirel,* 2025 WL 3218243 (ECF No. 11-1) (collecting cases). At some point, "evolving" ceases to mean unsettled and begins to mean simply losing.

awarded fees pursuant to the EAJA for Respondents' unlawful immigration detention practices.[5]

*See, e.g.*, *Salazar*, 2026 WL 594606, at *2; *Cornejo Guanuquiza v. Francis*, No. 25-10267, 2025 WL 3678121, at *2 (S.D.N.Y. Dec 18, 2025); *L.R.C. v. Maldonado*, No. 25-6825, 2026 WL 946787, at *2 (E.D.N.Y. Apr. 7, 2026); *C.M. v. Knight*, No. 25-01915, 2026 WL 743350, at *2 (E.D. Cal. Mar. 17, 2026); *Hurtado v. Bondi*, No. 26-546, 2026 WL 752441, at *2 (D. Minn. Mar. 17, 2026); and

**WHEREAS**, the Court has reviewed the Motion and supporting documentation and finds that the fees and costs sought therein are reasonable and appropriate under the EAJA.[6] *See* 28 U.S.C. § 2412(d)(2)(A) ("[A]ttorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee"); (*see also* ECF No. 14 at 5 (seeking fees in the amount of $2,808.70 for 10 hours of work); ECF No. 14-2 (timesheets); ECF No. 14-3 (Consumer Price Index calculator)); therefore

**IT IS,** on this 22nd day of April, 2026,

**ORDERED** that Petitioner's Motion for Attorneys' Fees pursuant to the EAJA, (ECF No. 14), is GRANTED; and it is further

**ORDERED** that Respondents shall pay Petitioner's counsel fees in the amount of

---

[5] The need for a fee award is especially acute in cases such as this one. Immigration detainees are among the litigants least able to protect their own rights without counsel, and many lack both meaningful access to legal representation and the financial ability to retain it. Where the Government engages in unlawful detention practices against such vulnerable individuals, an award of fees serves not only to compensate counsel for vindicating clear legal rights, but also to ensure that judicial review remains a realistic check on executive overreach. Without fee shifting, the practical ability of many noncitizens to obtain relief from unlawful detention would be substantially diminished. And, just like fee-shifting in civil rights cases, awarding fees serves the important public policy of incentivizing attorneys to accept such cases even if the client cannot initially pay for their services.

[6] Respondents do not oppose the amount of fees requested. (*See* ECF No. 19).

$2,808.70 within thirty days of the date of the Court's original Order, (ECF No. 21), and file a letter on the docket confirming they have done so; and it is finally

**ORDERED** that the Clerk of the Court shall **CLOSE** this case.

**CHRISTINE P. O'HEARN**
**United States District Judge**